[Civ. No. 1629.   Third Appellate District.—February 1, 1917.]

HENRY L. KUNS, Respondent, v. GEORGE M. DIAS, Appellant; EMMA F. DIAS et al., Respondents.

ACTION FOR FORECLOSURE OF MORTGAGE—PREVIOUS ACTION FOR PARTITION—CONSOLIDATION FOR TRIAL—PERMISSIBLE PROCEDURE.—An action for the partition of mortgaged lands may be consolidated and tried with an action for the foreclosure of the mortgage commenced subsequent to the action for partition, where, upon the calling of the foreclosure action for trial, all parties agree that whatever is done in the matter of the partition should be subordinated to the mortgagee's right of foreclosure.

ID.—PARTITION—DETERMINATION OF QUESTIONS OF TITLE—JURISDICTION. In an action for partition, the rights of adverse occupants may be put in issue, tried, and determined.

ID.—WIFE'S INTEREST IN MORTGAGED PROPERTY—APPEAL FROM JUDGMENT—PRESUMPTION.—Where in an action for the foreclosure of a mortgage executed by a husband and wife upon property acquired by them in both of their names as grantees, the husband contended that the wife took no title, and that a deed made by her of her claimed undivided one-half interest in the property to a third party was void, it will be presumed on appeal, where findings were waived, in support of the judgment, that the court held that the presumption in favor of the wife's title declared by section 164 of the Civil Code was not overcome by evidence, and whether overcome or not, that the purchaser of her interest was a purchaser in good faith and for a valuable consideration.

ID.—DECLARATION OF HOMESTEAD BY WIFE—ATTACK UPON VALIDITY—RIGHT OF PURCHASER FROM WIFE.—Where the husband introduced in evidence a declaration of homestead made by the wife upon the property for the purpose of establishing his claim that the property was community property by reason of the recitals made by her therein to that effect, the purchaser of her interest, although the declaration was not mentioned in any of the pleadings, may show its invalidity.

ID.—APPEAL—EXCEPTIONS TO TESTIMONY—WHEN REVIEW UNNECESSARY.—An exception to the admission of testimony referred to in a brief without comment need not be considered by the appellate court.

APPEAL from a portion of a judgment of the Superior Court of Merced County, and from an order denying a new trial.   E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Rose & Silverstein, for Appellant.

Griffin & Carlson, and J. W. Hawkins, for Defendants and Respondents.

E. J. Fleming, for Plaintiff and Respondent.

CHIPMAN, P. J.—The complaint in the action was for the foreclosure of a mortgage executed December 20, 1909, by George M. and Emma F. Dias to secure the payment of a certain promissory note, of the above date, made and delivered to plaintiff. The note was made payable six years after date, but the word "years" was omitted by clerical error. In the description of the real property mortgaged, section 31 was by like error made to read 30. The complaint seeks to have these mistakes corrected. Defendant Joe G. Coelha is alleged "to have some right, title, or interest or lien in or to said premises described in said mortgage or some part thereof, which interest and claim were subsequent to and subject to the lien of said mortgage."

Defendant Emma F. Dias in her answer alleged that at the time the mortgage was executed she was the owner of an undivided one-half interest in the mortgaged premises, but since said date she granted and sold said interest to defendant Coelha, who is now the owner thereof.

Defendant Coelha in his answer alleges that he is the owner of an undivided one-half interest in the mortgaged premises and that defendant Emma F. Dias conveyed to him said interest on January 11, 1913; that he is a purchaser in good faith and for value of said interest in said premises. By way of cross-complaint, alleges that he and defendant George M. Dias are tenants in common of the said premises, each owning an undivided one-half interest therein; that plaintiff claims to be the owner and holder of a mortgage on said land given to secure the payment of a promissory note for $8,816, "which he claims to be a valid and subsisting lien against said land"; that "ever since this defendant became an owner of an undivided one-half interest in said land, defendant George M. Dias has collected the rents, issues, and profits from said land. and has failed and refused to account therefor to this defendant"; that "there are no liens or encumbrances on said land and premises appearing of record other than those hereinbefore

mentioned and that no person other than this defendant and the said defendant George M. Dias are interested in the said premises as owner or otherwise, except as hereinbefore alleged; that this defendant has been compelled to employ Messrs. Griffin & Carlson and J. W. Hawkins as his attorneys to defend this action and to prosecute the action set forth in this cross-complaint, and five hundred dollars is a reasonable attorney's fee for such attorneys.''

The prayer of the cross-complaint is ''for a partition of said real property according to the respective rights of the parties hereto''; or, if a partition cannot be had, for a sale of the premises and a division of the proceeds; for the allowance of attorneys' fees; that if it be adjudged and decreed that the plaintiff, Henry L. Kuns, is the owner and holder of a promissory note and mortgage upon said premises, that the amount thereof be ascertained and determined and that the same be paid from the proceeds of the sale of said property, and that the residue received from the sale of said property after payment of all costs and expenses incurred in said action be partitioned between this defendant and defendant George M. Dias; and that said Dias be compelled to account for all rents, issues, and profits from said land since January 11, 1913, and such further order as shall be just and equitable.

Defendant George M. Dias, answering the cross-complaint of defendant Coelha, denied that Coelha or any other person is the owner as tenant in common or otherwise with this defendant in said land or is the owner of any interest therein ''except as hereinafter set forth''; denied that this defendant, since January 1, 1913, has collected any rent, issue, or profit from said land or has refused to account to said Coelha, and alleged that said Coelha is not, and never was, entitled to any of the rents, issues, or profits of said land; denied that said Coelha had been compelled to employ attorneys, as by him alleged, or at all; alleged that the whole of said tract of land ''is the community property of the defendant George M. Dias and the defendant Emma F. Dias''; that said land was acquired by this defendant after his marriage with said Emma, by contract of purchase with plaintiff, and that thereafter, about December 20, 1909, ''said Kuns, on the request of the defendant George M. Dias, and on the payment to said Kuns of a large part of the purchase price of said land by the said George M. Dias to said Kuns, made and executed a deed of

grant, bargain, and sale of said land and delivered the same to said George M. Dias; that said deed so executed and delivered conveyed said land, on its face to said George M. Dias and to said Emma F. Dias, his wife''; that this defendant, when said deed was delivered and for many months thereafter, believed that he was the sole grantee therein named; that said Emma took no part in any of the agreements in relation to the transfer of said land, with said Kuns, except to sign and execute a mortgage and note for the unpaid purchase price of said land and that the name of said Emma was inserted in said deed ''without the knowledge, request, or consent of the defendant George M. Dias''; that this defendant is ''a foreigner and not educated in the English language, and did not read or otherwise acquaint himself with the contents of the said deed, at or before its delivery, and relied solely on the good faith of said Kuns and in the confidence existing between himself and said Kuns, as to the proper wording and execution of said deed, according to their agreements theretofore made''; that this defendant had not, prior to the execution of said deed, promised or agreed with his said wife that he would convey or cause to be conveyed to her an undivided interest in said land, nor has he since so promised; that his said wife did not have any knowledge that she was named as grantee in said deed or claim any ownership in said land, except as the wife of this defendant, until on or about the seventh day of January, 1913, on which date she sold an undivided one-half interest in said land to said Coelha and conveyed the same to him; that said deed was made without the knowledge or consent of this defendant, and ''said Coelha still holds said deed against the will and without the consent of defendant George M. Dias''; on information and belief, alleges that said deed to said Coelha ''was made and delivered by her without consideration, and to unlawfully and fraudulently deprive said defendant George M. Dias of his interest therein''; that said Coelha well knew at the time of the execution and delivery of said deed by said Emma to him of the interest of this defendant in said land ''and said Coelha took said deed with such knowledge and conspired with said Emma F. Dias, then and there, to defraud said defendant George M. Dias of his interest and the interest of the community in and to said land, so conveyed to him, the said Coelha''; that unless a reconveyance of said interest in said land so conveyed to said

Coelha can be had, this defendant has been and will be damaged in the sum of ten thousand dollars.

The prayer is that Coelha take nothing by his cross-complaint; that the deed from defendant Emma F. Dias to Coelha be canceled, and that a reconveyance of said property by said Emma be ordered; that this defendant recover damages against said Coelha in the sum of ten thousand dollars, and that this defendant have his costs and such further relief as may seem meet in equity.

Plaintiff, answering Coelha's cross-complaint, denied most of the averments thereof, generally on information and belief; alleged the material averments of the complaint, and alleged that plaintiff's security "will be greatly impaired and lessened if partition be made of said mortgaged premises."

Findings were waived. It was adjudged that Coelha's interest in the premises was acquired subsequent to and subject to the lien of plaintiff's mortgage and with full knowledge thereof; the corrections prayed for in the note and mortgage were made, as also the usual provisions for the sale of the property and payment of the amount found to be due; also the usual provision for a deficiency judgment. Among the provisions of the decree are the following:

"It is further ordered, adjudged, and decreed that the defendant Joe Goncalves Coelha and defendant George M. Dias are the owners in common of that certain real property" (the land in suit).

"It further appearing to the court that all the parties to said action have consented that only one referee be appointed to partition the land and premises hereinbefore described between the defendant Joe Goncalves Coelha and the defendant George M. Dias, subject, however, to the foreclosure and sale thereunder of the mortgage hereinbefore mentioned, Wherefore, It is further ordered, adjudged, and decreed that that certain declaration of homestead filed by Emma F. Dias upon the land and premises hereinbefore described and dated the 5th day of December, 1912, and recorded . . . , is null and void."

The decree appoints J. E. Russell referee to make partition, "and that the said referee be and he hereby is vested with all the powers necessary to perform all the duties required or created by this interlocutory decree so far as the same affects the partition of the lands and premises hereinbefore de-

scribed." The decree proceeds to order partition, etc., "provided, however, that if the said J. E. Russell, referee in partition, finds and ascertains that said property cannot be so partitioned, quality and quantity relatively considered, then he shall thereupon report the same to the court, specifying the manner in which he shall have executed his trust."

It is further decreed that if the premises cannot be partitioned, "in that case and after the referee has so reported the premises be sold as required by law, subject to the payment of the mortgage aforesaid and subject to the judgment of foreclosure and order of sale herein, and sale thereunder, and that the proceeds from such sale, after payment of all costs of partition and attorneys' fees be divided and one-half thereof paid to the said Joe Goncalves Coelha and one-half thereof to said George M. Dias."

Defendant George M. Dias appeals from the portions of the judgment decreeing that defendant Coelha and defendant George M. Dias are owners in common of the premises; that the homestead declared by defendant Emma Dias is void; that a referee in partition be appointed and from other portions of the judgment relating to the partition of said premises. Said defendant also appeals from the order denying his motion for a new trial. In his brief appellant states that his appeal "is urged only to that portion of the judgment based upon the cross-complaint of Coelha, viz., the partition of the property decreeing that Coelha is the owner of an undivided one-half interest therein. We make no objection to the decree and judgment of foreclosure of mortgage."

The points discussed in appellant's brief are:

1. That the court had no jurisdiction in foreclosure proceedings to try title to property or to partition the property to be foreclosed.

2. That the court had no authority or jurisdiction to determine the homestead to be null and void.

3. That it appears from the record that the property was the community property of appellant, and that Coelha purchased with knowledge sufficient to put him upon inquiry as to the true status of the property and had knowledge of the homestead declared by Mrs. Dias in which she claimed the property to be community property.

When the cause was called for trial it appeared that an action had been commenced by Coelha against George M. Dias,

H. L. Kuns, and John Doe, No. 2916, prior to the foreclosure action, for partition of the premises. Some discussion arose as to whether the question of partition should be tried on Coelha's cross-complaint or on the pleadings in the action No. 2916. It was finally stipulated and the court made an order that the present case, No. 2923, and No. 2916, be consolidated and tried together. There was no objection by any of the parties to the trial of the issues for partition. We must presume that upon the consolidation of the cases the pleadings in No. 2916 were before the court, although they do not appear in the record, and we must presume further that these pleadings were sufficient to present the issues necessary in an action for partition. No objection was made by appellant to the testimony on such issues. A *lis pendens* filed in action No. 2916 was introduced without objection and its recitals show that the purpose of the action "is for the partition of the real estate hereinafter described (the premises here involved), and to have it ordered, adjudged, and decreed that if partition of said real estate cannot be had, that the said real estate be sold and the proceeds distributed in partition among the parties to this action in accordance with their respective interests therein." It is perhaps unusual for partition to be sought in a foreclosure proceeding, and, probably, had there been objection, the court would not have made the order. But as all parties agreed that whatever was done in the matter of partition should be subordinated to plaintiff's right first to foreclose and sell the land under the foreclosure proceeding, we can see no legal objection to the course taken at the trial. In *Towle Bros. Co.* v. *Quinn,* 141 Cal. 382, 385, [74 Pac. 1046], cited by appellant, the action was foreclosure of mortgage. Over defendant Hanlon's objection, the complaint was amended by setting up the proceedings in an action in partition, previously commenced, and praying for an order that in effect took over the action in partition and carrying out its object in the foreclosure action. The sale under the partition proceeding had not yet taken place. On the appeal of Hanlon in the foreclosure action the court said: "The plaintiff in the partition suit was not called upon to make the respondent [Towle Bros. Co.] herein a party defendant, for he had no lien of record when that suit was commenced. (See Code Civ. Proc., secs. 752–801.) Indeed, when the suit was commenced respondent had no mortgage at all; and the one

which was afterward executed to it was not recorded until after the interlocutory decree, but respondent undoubtedly had the right and it was its duty to intervene in that suit and set up its mortgage lien, and have it adjudicated in the partition decree as provided by the code. At least it could not afterward, in its separate action to foreclose the mortgage, rightfully ask the court to cross over and take charge of the partition suit. This is not a bill to vacate a judgment on the ground of fraud," etc. In the present case Coelha's interest in the land was acquired after the execution and recordation of the mortgage, and he was properly made a party to the foreclosure action in order to have his interest adjudged to be subsequent and subordinate to the mortgage. Had he objected to the consolidation of the partition suit with the foreclosure action, his position would have been that of Hanlon in the Towle Bros. case. But he and all other of the parties, plaintiff and defendants, stipulated that the partition and foreclosure cases should be heard and determined in the foreclosure case, and as both were of equitable cognizance, the power of the court so to proceed cannot now be questioned.

That the court had the right to try questions of title we think well settled. In *Adams* v. *Hopkins*, 144 Cal. 19, 29, [77 Pac. 712, 716], objection was made that the rights of defendants, as adverse occupants, could not be determined in that case. The court said: "It is settled in this state that the rights of adverse occupants of land sought to be partitioned 'may be put in issue, tried, and determined in such action.'" (Citing *De Uprey* v. *De Uprey*, 27 Cal. 329, 335, [87 Am. Dec. 81]; *Gates* v. *Salmon*, 35 Cal. 576, 577, [95 Am. Dec. 139]; *Martin* v. *Walker*, 58 Cal. 590, 597; *Jameson* v. *Hayward*, 106 Cal. 682, 689, [46 Am. St. Rep. 268, 39 Pac. 1078].) In *Morenhout* v. *Higuera*, 32 Cal. 289, 290, 295, the court said: "The interest of each, or all, may be put in issue by the others; and if so, such issues are to be first tried and determined, and no partition can be made until the respective interests of all the parties have been ascertained and settled by a trial." (See Freeman on Cotenancy and Partition, sec. 531.)

It is contended that the averments in the pleadings are insufficient in partition and that the decree of partition is not supported by any testimony, the point being, as we understand appellant, that no title was shown in Coelha. It was

alleged in the cross-complaint of Coelha that he is the owner of an undivided one-half interest in the property and defendant George M. Dias is the owner of the remaining one-half, and that there were no liens or encumbrances on the land appearing of record other than those mentioned, "and that no persons other than this defendant and the said defendant George M. Dias are interested in the said premises, as owner or otherwise." What allegations upon this question were in the pleadings on the partition suit does not appear. All the pleadings seem to proceed upon the assumption that the interests involved were only those of Coelha and appellant. Dias in his answer denied that Coelha, "one of the defendants herein, or any other person is the owner, as tenant in common or otherwise, with the said defendant, George M. Dias in the tract of land described in said cross-complaint of said Coelha, or any tract of land described herein or at all, except as hereinafter alleged." And the pleading then alleges that the land is the community property of Dias and that his wife Emma had no interest in it. In its decree the court declared that the property belonged to Coelha and Dias as cotenants in equal shares and thus disposed of all the property and all of the interests therein of all persons known or unknown.

Coelha's title was based upon a grant deed of the premises in question, dated January 11, 1913, by Emma F. Dias, granting to Joe Goncalves Coelha, grantee, which said deed recited that it was "made subject to a mortgage upon said premises," plaintiff's mortgage, and purported to convey "all that certain lot, piece or parcel of land, situate," etc., describing the mortgaged premises. Coelha also introduced and there was admitted in evidence without objection a grant, bargain and sale deed, of date December 20, 1909, reading: "Henry L. Kuns and Mary E. Kuns, husband and wife, of Lordsburg, California, in consideration of ten dollars, and other good and valuable considerations, to them in hand paid, the receipt of which is hereby acknowledged, do hereby grant to George M. Dias and Emma F. Dias, husband and wife, of the county of Merced, State of California, all that real property" etc., particularly described by metes and bounds and being the mortgaged premises here involved.

. Section 164 of the Civil Code provides as follows: "All other property acquired after marriage by either husband or

wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. And in case the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common, unless a different intention is expressed in the instrument, and the presumption in this section mentioned is conclusive in favor of a purchaser or encumbrancer in good faith and for a valuable consideration. . . .''

Under this section two presumptions arise from the terms of the Kuns' deed: First, a disputable presumption that title to an undivided one-half interest, as tenant in common, in the property described in the deed vested in Mrs. Dias ''as her separate property''; second, this presumption is conclusive in favor of Coelha if he was a purchaser in good faith and for a valuable consideration. We are authorized to assume, in support of the judgment, findings having been waived, that the court held that the presumption in favor of Mrs. Dias' title was not overcome by evidence and, whether overcome or not, that Coelha was a purchaser in good faith and for a valuable consideration.

The supreme court said, in *Alferitz* v. *Arrivillaga,* 143 Cal. 646, 649, [77 Pac. 657]: ''The law will not allow idle presumptions to be indulged in against a deed delivered and recorded. Facts must be proven from which it is clearly made to appear that the property, in such cases, is community property, or the deed will be given effect according to its terms.'' Appellant sought to establish his right to the property as against Coelha's right by introducing a declaration of homestead by his wife recorded prior to her deed to Coelha; also, by appellant's testimony; by the testimony of Kuns, grantor of the deed to appellant, and by the testimony of Coelha, both of whom were introduced as appellant's witnesses.

The homestead interest of Emma F. Dias was not mentioned in any of the pleadings. The declaration of homestead was introduced by appellant apparently to support his claim that the property was community property because she so stated in her declaration. Furthermore, appellant would have been advantaged, had the homestead proven to be valid, for it would

have annulled the deed made subsequently to Coelha by Mrs. Dias, for the reason that her husband did not join in its execution. The declaration of homestead having been introduced by appellant, it was competent for Coelha to show its invalidity, which he did by undisputed evidence that Mrs. Dias was not living on the property at the time the homestead was declared. Mrs. Dias testified:

"Q. Had you lived on that ranch for one year before that time? A. No.

"Q. And you have not lived on the ranch since? A. No, sir.

"Q. You never filed any other homestead on the premises except that one? A. No, sir, I never did."

She had in fact been living apart from her husband. He testified that she left him in October, 1911, as we understand the evidence, and never came back to the ranch. The homestead was recorded December 5, 1912. Appellant testified: "She never did live on this part of the ranch in controversy either before or after she left me or at all." All that is now claimed by appellant is, as stated in appellant's brief, that "the portion of the decree which declared the homestead null and void 'is superfluous and nugatory.'" It is urged, however, that Coelha had knowledge of this homestead or of facts putting him on inquiry that it existed, and that he is charged with knowledge of the statement in the declaration "that the land and premises hereinafter described is the community property of myself and my said husband, George M. Dias." Coelha testified that he knew Mrs. Dias had declared a homestead on the premises, but he was advised by his attorney that it was invalid, for the reason that the statement made therein that she was at the time residing on the property was not true; that he purchased the property in good faith, paying her one thousand five hundred dollars for her interest and assumed the payment of the mortgage; that he made the payment by a check on a Modesto bank where he kept his account and "she cashed the check." On his redirect examination by appellant's attorney Coelha testified:

"Mr. Whitby: Q. From what Mrs. Dias told you, did you know that she was contemplating another action for divorce at that time? A. She came over to me and she said that she was getting no support for the children, and she came

there to see Mr. Griffin, and Mr. Griffin was not there and Mrs. Dias told me that Crow from the west side advised her to go to see Hawkins, so I took her over to Mr. Hawkins; she told all of her troubles to Mr. Hawkins, that George Dias offered her five hundred dollars if she signed all the rights back to George Dias to the property. She said to Hawkins that George Dias offered her five hundred dollars if she would turn all the property back to George Dias and signed away the rights, and Mr. Hawkins asked her if she could sell it that way and she said she would like to get more, and Mr. Hawkins asked her if it was separate property and she said that it was, because she signed the deed and mortgage, so at that time Mr. Hawkins asked me why I did not want to buy the property and I told him if she would give me a good title I would buy it, and he said, 'I will write to the county clerk and find out.' In the meantime, I went to see the property and when I came back Hawkins got a letter from the county clerk of Merced, and he told me that she could give me a good title and I told her I would give her one thousand five hundred dollars and I would pay the mortgage; that is it. She told me that Dias had offered to give her five hundred dollars if she would sign her rights back to him; she showed the letter to Hawkins and I think the letter was five hundred dollars.

"Q. Before you bought that property, did you know that she had put a homestead on it? A. Well, she told me it was a homestead, but she could release the homestead, just a tract which she told me the homestead was on.

"Q. She did not release it, did she? A. Mr. Hawkins told me it is not valid; he said that homestead did not amount to anything and they found out she did not live on the place, what my lawyer told me. . . . I did not know, prior to the purchase of this land from Mrs. Dias, that the title was in question; I know that my lawyer told me it was good, that she could give me a good title and that's what I did, I bought it; she told me that her husband had offered her five hundred dollars to deed back the land to him; when George Dias wanted to give five hundred dollars and she to sign all her rights back to him, I thought she could give it to me as long as she could give it to George."

He was examined at considerable length by appellant's

counsel in an effort to show that he was present in court when the divorce proceedings between appellant and his wife were in progress and thus became aware that the title to this land was in dispute, but there was no evidence that the pleadings were read in his hearing or that he knew of any dispute as to the title or that the question was discussed in his presence or hearing. The pleadings were introduced but are not made part of the bill of exceptions.

Assuming that Coelha was put upon inquiry as to the title, what were the sources of information to which he was called upon to resort? The deed from Kuns on its face showed that Mrs. Dias owned a half interest in the property which she could convey. The statement in the homestead declaration that the property was the community property of herself and husband was not conclusive, nor did it necessarily cast any doubt upon the language of the deed, and for the purposes of the homestead it was immaterial whether the property was community or separate. Besides, she claimed and so told Coelha that it was her separate property, and she exhibited a letter in which her husband had offered her five hundred dollars for her interest. Furthermore, Coelha had the advice of an attorney that Mrs. Dias could convey a good title. Coelha testified that Mrs. Dias made the following statement to him, at the time of the sale to him, in explanation of how she came to sign the note and mortgage and why the property was conveyed to her and her husband:

"Mrs. Dias told me she is in a family way and a few months before she had her baby she lived with her father, her mother and father; and Dias came home and said, 'Mrs. Kuns is in town and wants you to go with me and sign that deed, the note and mortgage,' and Mrs. Dias told him, 'What is the matter? Can't you do that alone without I go?' and she said, 'I don't feel well,' and George Dias said, 'Well, it is better for you because suppose if you die and the child lives, the child would get one-half of the property,' and he said, 'If everything be in my name, I will get everything,' and he said, 'If you go and sign everything, one-half of the property belongs to you,' and she went with George Dias and signed the deed and note.

"Q. Did she tell you that Mr. Dias had told her that he had the deed made in her name? A. The property belonged

to the two of them, and in case of death if she died and if the child was born alive, she would get one-half of it.

"Q. She told you that? A. She told me that George Dias told her that. . . .

"Mr. Carlson: Q. What was said at that time about the homestead? A. I think Mr. Hawkins told her that the homestead is not valid because she don't live on the place and that she could give me a deed. He said the homestead is not valid; she said the homestead had been filed just so that George could not sell, something like protection and for the support of the children; I considered that the property, I mean that half interest is mine absolutely; I paid one thousand five hundred dollars for it; this is not the first piece of land that I have bought; I have bought over forty thousand dollars worth of property in a little less than three years; I have bought and sold, and I have sold over thirty thousand dollars worth of property."

Mr. Kuns testified that so far as he knew Mrs. Dias did not "have anything to do with buying that land," and that personally she did not pay any money. He testified:

"I made an agreement to sell this land to Mr. Dias; I don't remember the exact force of that agreement; I cannot recollect it to mind; I afterward made a deed to this land; in that deed, the parties or grantees were named as George M. Dias and Emma F. Dias; I certainly did receive directions from Mr. Dias as to who should be made parties and grantees in the deed or I would not have made them grantees; I mean he wanted the deed made to himself and wife, or I should not have put her name in; it is possible that that may have occurred in relation to the mortgage, but I don't think so; I think it was with relation to the transfers.

"Q. Did he ask and request you to put his wife's name in the deed as well as in the mortgage? A. That is my recollection, but of course I would not undertake to say that is exactly true, because it is awful hard to recollect these things, but I always act on these things according to instructions, because I have no authority whatever to put her name in the deed without its having been at his request, no authority whatever.

"Q. Well, you did want Mrs. Dias' name in the mortgage? A. Certainly, if her name was in the deed.

"Q. Whether her name was in the deed or not, you would want her name in the mortgage? A. Well, as a general rule, I think that is customary.

"Q. Well, you have not any independent recollection, though, that Mr. Dias asked you to do that? A. Not from memory, no, sir; not exactly from memory. I cannot state because I am getting old and I cannot remember those things as I used to, but I certainly had instructions, or I would not have done what I did do."

Appellant testified that he paid for the property with his own money, and bought it for himself; that he never told his wife that he bought the land for her or that he wanted to make her a gift of one-half of the property. He testified:

"I never knew she signed any deed only Mr. Kuns told her to sign on the mortgage and that is all I know; I never knew her name was on the deed until she left; another thing, she never had been in the family way at the time I make that sale."

It appeared that appellant and Mrs. Dias were married April 24, 1909; their first child was born June 15, 1910.

"The Court: It was born in June, 1910, and the deed was made in December, 1909. Was she in the family way at that time? A. She never knew it because the baby was born just about eleven months after we get married."

It thus appears that the child was born a little less than six months after the deed was made. The period of gestation for the human animal is given at forty weeks. It is therefore quite probable that Mrs. Dias knew she was in an "interesting situation" on December 20, 1909.

We have given the evidence somewhat at length rather than a statement of what we deemed to be its import, because it is but fair to the trial judge that it be made to appear upon what evidence the court based its conclusions and whether or not its conclusions were well founded.

Appellant cites *In re Carlin,* 19 Cal. App. 168, [124 Pac. 868], claiming that "the facts disclosed by the opinion are almost identical with the facts of the case at issue." The opinion is by Mr. Justice Shaw of the second appellate district, and the supreme court denied a hearing of the case in that court. The principles of law governing this class

of cases are succinctly, clearly, and, we think, in the case cited, correctly stated. It will be seen upon an examination of the opinion that the evidence was meager and, such as it was, all one way. "Moreover," said the learned justice, "as in the case of *Fanning* v. *Green,* 156 Cal. 279, [104 Pac. 308], he [the husband] testified positively that in having the property deeded to his wife it was *not his intention to give it to her.* [Italics the court's.] In the absence of evidence of the existence of any circumstances inconsistent with his testimony, received without objection and conceded to be competent, we are constrained to hold the conclusion of the trial court should not be disturbed."

It is true that in the present case the husband testified that in purchasing the property he did not intend to make a gift to his wife of an interest in the property or that she should share in the title at all. But the trial court evidently did not nor was it bound to accept the testimony of the husband as true, for it was controverted by many and cogent facts and circumstances inconsistent with its verity. Furthermore, there is a feature of this case not present in the Carlin case, namely, the transfer of the wife's interest to a purchaser in good faith for a valuable consideration, which manifestly the trial court found was supported by the evidence. Whether or not the deed to Mrs. Dias was intended as a gift and whether or not Coelha was a purchaser in good faith for a valuable consideration, were questions of fact, as was said in the Carlin case, "to be determined by the trial court upon the evidence adduced at the trial, and its conclusion, unless manifestly without support, should not be disturbed by an appellate court." We cannot say that the conclusions of the learned trial court were without support.

Some alleged erroneous rulings will be briefly noticed.

When appellant was called as a witness, questions were propounded to him as to how he became possessed of the land in question—how he first became so possessed. (Exceptions numbered 1 and 2.) The objection to the questions was that it was immaterial how he became possessed of the land, and that it was not the best evidence and that the issues related to the present title. The court ruled that "if it is in writing, it seems to me they would have the right to make the objection, but if it was not in writing, then he can testify. It is

the present title.'' Counsel for appellant stated that it was his right ''to show title from the beginning of the transaction down to the present time.'' Later the witness was permitted to testify how he came to buy the land, as we have shown by his testimony. His grantor also testified to the circumstances attending the purchase. We cannot see that appellant was prejudiced by the ruling. The court sustained an objection to a question put to Coelha whether or not Mrs. Dias was considering commencing a second action for divorce at the time the witness was negotiating for the purchase of the property. The question seems to have called for the conclusion of the witness. He stated: ''I could explain the way it was and you could understand it better.'' An answer yes or no was demanded and the court sustained the objection. We cannot discover that the witness' knowledge of Mrs. Dias' intentions had any relevancy to the case. The witness was asked to tell the court what Mrs. Dias told him about this transaction, how she came to sign the note and mortgage. The question was objected to as hearsay and the objection overruled and counsel moved to strike out the testimony after it was given on the same ground, which motion was denied. The matter is referred to in appellant's brief as ''Exception No. 6, page 101, fol. 302–3,'' without comment. We would be justified in treating it likewise. The matter was part of the conversation brought out by appellant and occurred at the time Coelha was seeking information about the title and was deciding whether or not to make the purchase. We discover no error in the ruling. It is to be remembered Coelha claimed to be a purchaser in good faith and for a valuable consideration, which appellant denied. As tending to show good faith the testimony was admissible.

Appellant concludes his brief by the following statement: ''The appeal, however, is urged only to that portion of the judgment based upon the cross-complaint of Coelha, viz., the partition of the property decreeing that Coelha is the owner of an undivided one-half interest therein.''

We think the evidence was sufficient to support such findings as were necessary to support the judgment. The decree simply means that the property shall first be sold to satisfy the mortgage, and if a surplus remains, such surplus shall

be dealt with upon the assumption that Coelha and Dias are tenants in common owning equal shares thereof.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 2, 1917.