[Civ. No. 2550. First Appellate District.—November 8, 1918.]

## FRANK WELLS, Respondent, v. EMMA ALLEN, Administratrix, etc., et al., Appellants.

APPEAL—FINDINGS—CONFLICT OF EVIDENCE.—An appellate court may not disturb a finding made by the trial court unless there is no evidence to support it or the evidence is so clearly preponderating against the finding as to amount, in legal effect, to a want of substantial evidence.

HUSBAND AND WIFE—COMMON-LAW MARRIAGE—EVIDENCE.—The evidence in this case is reviewed and held sufficient to support a finding of a common-law marriage between the plaintiff and the deceased intestate, contracted before the amendment of section 55 of the Civil Code in 1895.

ID.—PROSTITUTION ON PART OF WIFE—MARRIAGE NOT NEGATIVED.—Evidence sufficient to establish a common-law marriage under section 55 of the Civil Code as it existed prior to its amendment in 1895 is not absolutely negatived by the fact that before the marriage and for several years thereafter the alleged wife was a prostitute, and that after the marriage she continued that life and earned money thereby.

ID.—HUSBAND'S ACQUIESCENCE IN WIFE'S MISCONDUCT—INFERENCE.—The fact of the husband's acquiescence in the wife's misconduct after marriage in such case could only be evidence against the probability of the marriage, and would merely establish an inference that a marriage had not taken place in the absence of direct evidence to the contrary.

ID.—COMMUNITY PROPERTY—PURCHASE WITH COMMUNITY FUNDS—CONFLICTING EVIDENCE.—In this action by a husband to quiet title to certain real property, the evidence is held sufficient to sustain a finding of the trial court that the property was purchased with community funds.

ID.—PROPERTY TAKEN IN MAIDEN NAME OF WIFE.—The fact that the property in such case was taken in the maiden name of the wife, and was mortgaged later by her in that name would be immaterial, since, if the parties were married and the property was purchased with community funds, it would be community property regardless of the name in which it stood.

ID.—TRANSFER BY WIFE AND RETRANSFER TO HUSBAND AND WIFE.—The surviving husband of a deceased wife was not barred from claiming property as community property by the fact that the wife, for the purpose of procuring a "McEnerney title" to the property, deeded it to a title company which held the title until that purpose was

accomplished, and then at the wife's request retransferred it to her and her husband.

ID.—ACTION TO ESTABLISH COMMUNITY RIGHT—STATUTE OF LIMITATION —INNOCENT PURCHASER.—This action to establish the community nature of property was not barred from and after one year from the taking effect of the amendment of 1897 to section 164 of the Civil Code, that amendment having been added solely for the purpose of protecting innocent purchasers for value, and being applicable only in such a case.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Lovett K. Fraser and Ornbaum & Frazer, for Appellants.

Louis H. Brownstone, for Respondent.

LENNON, P. J.—This is an appeal on behalf of certain defendants from a judgment rendered for the plaintiff in the above-entitled action, quieting his title to certain real property in the city and county of San Francisco. The defendants, Theodore Verdusco, Michael Verdusco, Muria Castro, and Pablo Castro, her husband, Dolores Bryan and James Bryan, her husband, have appealed pursuant to section 941b of the Code of Civil Procedure. The facts, in brief, are as follows:

The plaintiff, Frank Wells, filed suit to quiet title to certain real property situated in the city and county of San Francisco and particularly described in the complaint filed herein. Emma Allen, as administratrix of the estate of Refugia Wells, deceased, was made a party defendant, as were also the above named appealing defendants. The complaint set out that all the defendants claimed some right, title, or interest in and to the said property, but that said claims were without right, and asked that the plaintiff's title be quieted against them.

The defendant, Emma Allen, as administratrix, etc., answered and alleged that the property in controversy was the property of Refugia Wells, deceased, and that she was entitled to the same as administratrix of the estate of said decedent.

The other defendants answered and claimed the whole of said property as the heirs at law of Refugia Wells, deceased.

The trial court found, in effect: That Refugia Wells, sometimes known as Refugia Verdusco, died intestate; that at the time of her death she was the wife of the plaintiff, Frank Wells; that the property in dispute was community property; that none of the defendants are entitled to any interest in said property, and concluded, as a matter of law, that Frank Wells was the owner in fee simple and entitled to the possession of said property.

The appellants contend that the evidence does not support the findings in certain important particulars. The first objection made by appellants is that the evidence does not support the finding that the plaintiff and the deceased were husband and wife. The court found all the facts necessary to support a common-law marriage, which was a valid marriage in this state at the time these parties assumed that relation, and an appellate court may not disturb a finding made by the trial court unless it appears that there is no evidence to support it or that the evidence is so clearly proponderating against the finding as to amount in legal effect to a want of substantial evidence. (*Williams* v. *Kidd,* 170 Cal. 631, [151 Pac. 1].) While there is some conflicting evidence in the record, we think that the testimony amply supports the findings in this regard. The evidence is uncontradicted that these people lived together openly and notoriously and continuously as husband and wife for nearly thirty years; there is evidence that the woman was known to every child on the street where she and plaintiff lived, and to all the neighbors and tradespeople as Mrs. Wells; that the plaintiff paid her bills and spoke of her as his wife and introduced her as such, and that the deceased called the plaintiff her husband. The defendants emphasize the fact that the evidence shows that the deceased, before her marriage to Wells and for several years thereafter, was a prostitute, and that the plaintiff admits that after their marriage she continued this course of life and earned money thereby. Counsel for appellants seem to think that this evidence should negative all other evidence in the record in support of the marriage, and raise in effect an absolute presumption against any such finding. They cite the case of *Grigsby* v. *Reib* (Tex. Civ. App.), 139 S. W. 1027, and quote language therefrom to the effect that such conduct

on the part of a woman is absolutely inconsistent with the idea of marriage. We have carefully read that case and find that the court upon reviewing the finding of the trial court that there was no marriage, discussed the weight of the evidence and justified the finding by referring to evidence of prostitution after the alleged marriage and known to the alleged husband. The court there said that the social and financial position of the alleged husband, as shown by the record, was such as to make it improbable that he would have married a woman and allowed her to openly continue such a course of conduct; and that in the light of this and other evidence, the findings of the trial court were justified. The facts of that case, we think, were somewhat different from the facts in the case under consideration.

In the present case, the record contains no testimony as to the social and financial standing of the plaintiff. From what appears in the record, he was of the same social standing as his wife and her associates. While it is true that there is a presumption that every man will observe the ordinary standards of conduct shared by self-respecting people—and that such an acquiescence on plaintiff's part in his wife's conduct was certainly violative of these—yet we assume that the trial court took this matter into consideration and duly weighed this evidence as against the other evidence offered, in arriving at its findings. The fact of the husband's acquiescence in the wife's subsequent misconduct could only be evidence against the probability of the marriage; it would merely establish an inference that a marriage had not taken place in the absence of direct evidence to the contrary.

In the case of *Sharon* v. *Sharon,* 75 Cal. 23, [16 Pac. 358], the court said: "Where the holding out to the world of the relation is evidence of a prior contract, such evidence does not necessarily depend for its effect upon amenity of manners or upon the degree to which parties extend to each other the affectionate respect which should attend the intercourse of husband and wife in well-ordered households. The *statute does not make the validity of the marriage by consent depend upon full performance of every mutual duty; the failure to perform certain important obligations is made ground for divorce.*"

We think that under the decisions the facts found in regard to this marriage fully complied with the requirements of sec-

tion 55 of the Civil Code, prior to the amendment of 1895, and that the findings of such facts were justified by the evidence.

Appellants also contend that the finding that the property in dispute was purchased with the community funds of plaintiff and deceased is unsupported by the evidence. Here again we are met with a situation where the evidence is conflicting and the only question before this court is: Was there any evidence to warrant the finding and to prevent an appellate court from interfering therewith? The plaintiff testified that immediately after the alleged marriage he gave his wife $550 in cash; that during the entire period of the marriage (twenty-nine years) he worked regularly except for one month, when he was looking for work; that he handed over all of his wages to his wife; that his wages averaged from $120 to $150 per month. The marriage took place early in the year 1886 and the property in question was purchased in October, 1887. The cost of the lot was two thousand five hundred dollars. The building upon the property was not put up until a year later, and at least a part of the money used for that purpose was obtained by mortgaging the property. The plaintiff erected the building himself.

It is true there is some testimony by the relatives of deceased that she seemed to have plenty of money before and after her alleged marriage; but the testimony is also to the effect that she spent this money freely and that she was generous with her entire family, giving them thousands of dollars. There is no testimony as to the amount of money she had on hand at any time; all the testimony in regard to her money is vague and uncertain. Most of the testimony of the brothers and sisters of deceased, and of her friend, Mrs. Soledada Garcia, as to the earnings of Refugia Wells, had reference to a time after the alleged marriage, and such earnings would, of course, be community property. Mrs. Garcia also testified that deceased showed her some money tied up in a quilt about *three years* before her alleged marriage. There is no evidence as to the amount of this money, and there is evidence that after that time she sent money to her relatives in Mexico, and brought them all up here, and that she sent her mother five hundred dollars for spending money. Added to this evidence was the legal presumption (unchanged by the amendments to section 163 of the Civil Code, as of the date of the

acquisition of this property) that property acquired by either husband or wife during coverture is community property, which presumption must be overcome by clear and convincing evidence. (*Dimmick* v. *Dimmick*, 95 Cal. 323, [30 Pac. 547]; *Meyer* v. *Kinzer*, 12 Cal. 247, [73 Am. Dec. 538]; *Ramsdell* v. *Fuller et al.*, 28 Cal. 38, [87 Am. Dec. 103].)

The fact that the property was taken in the maiden name of deceased and later mortgaged by her under that name would be immaterial in view of the above findings. For if the parties were married, and if the property was purchased with community funds, it would be community property regardless of the name in which it stood. (*Osborn* v. *Mills et al.*, 20 Cal. App. 346, [128 Pac. 1009].)

The last contention made by appellants is that even under the findings the plaintiff is barred by section 164 of the Civil Code as amended in 1897, [Stats. 1897, p. 63], from claiming this property as community property because in 1912 the deceased deeded the property to the San Francisco Land and Title Company for the purpose of procuring a McEnerney title to the property, and that said company held the title until such purpose was accomplished and then deeded the property to Frank Wells and Refugia Wells in accordance with the request of the latter.

Under the provisions of section 164 of the Civil Code, where property is conveyed to a married woman and her husband, two presumptions arise from the terms of the conveyance: First, a *disputable* presumption that title to an undivided one-half interest, as tenant in common, in the property described in the deed vested in the wife "as her separate property"; second, a conclusive presumption of such fact in favor of a purchaser in good faith and for a valuable consideration. (*Kuns* v. *Dias*, 32 Cal. App. 651, [163 Pac. 1052]; *Pabst* v. *Shearer*, 172 Cal. 239, [156 Pac. 466].)

Conceding that a disputable presumption that the deceased was entitled to an undivided one-half interest in the property by reason of the terms of the deed to herself and her husband by the title company, would arise in favor of the appellants, such a presumption can be overcome by positive evidence to the contrary, and we think the facts as found by this court, that the property was purchased with community funds, dispels the presumption. The court having found that the property was in fact community property, it was impressed with

that character as it passed from one grantee to another, and the plaintiff might show the facts against any but innocent purchasers for value. Certainly, since the trial court has found that Refugia Wells had only a community interest in the property, she could not enlarge that interest by transferring the property to another without consideration and having that other retransfer to herself and her husband jointly.

As to the point raised by the appellant that under section 164 of the Civil Code, as amended in 1897, the plaintiff is barred from maintaining an action to establish the community nature of this property from and after one year from the taking effect of said amendment, it has been decided by the case of *Osborn* v. *Mills, supra,* that such amendment was added for the sole purpose of protecting innocent purchasers for value and is applicable only in such a case.

The judgment is affirmed.

Sturtevant, J., *pro tem.,* and Beasly, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1919.

Angellotti, C. J., Sloss, J., Melvin, J., Lawlor, J., and Lennon, J., concurred.